UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COOKEVILLE DIVISION

| | |
|---|---|
| **CEDRIC JORDAN GROOMS, SR. #74329,** | ) )  ) |
| Plaintiff, | )  ) No. 2:23-cv-00044 |
| v. | )  )  ) |
| **CASEY COX, Sheriff of Cumberland County Jail, et al.,** | )  )  ) |
| Defendants. | )  ) |

## MEMORANDUM OPINION

Acting pro se, Cedric Jordan Grooms, Sr., who is currently in the custody of the Cumberland County Jail in Crossville, Tennessee, has filed a pro se, in forma pauperis complaint under 42 U.S.C. § 1983 and the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1. He brings this case against Casey Cox, Cumberland County Sheriff; Tim Clafflin, Cumberland County Jail Captain; John Griffith, Cumberland County Jail Administrative Sergeant; Casey Honeycutt, Cumberland County Jail nurse; Mike Hassler, Cumberland County Jail Lieutenant; Laurie Turner, Cumberland County Jail Deputy; and the Cumberland County Sheriff's Department, alleging violations of his civil and constitutional rights. (Doc. No. 1). Grooms also has filed an Amended Complaint (Doc. No. 5), a "Motion for Order of Transfer to Different Facility/TRO", (Doc. No. 8) and a Motion to Appoint Counsel (Doc. No. 9).

1

The Court will begin with Plaintiff's motions and then proceed to an initial review of the complaint as amended[1] pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

## I. SCREENING OF THE COMPLAINT

A. <u>PLRA SCREENING STANDARD</u>

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," <u>id.</u> § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in Section 1915(e)(2)(B). <u>Id.</u> § 1915A(b).

The court must construe a pro se complaint liberally, <u>United States v. Smotherman</u>, 838 F.3d 736, 739 (6th Cir. 2016) (citing <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. <u>See</u> <u>Thomas v. Eby</u>, 481 F.3d 434, 437 (6th Cir. 2007) (citing <u>Denton v. Hernandez</u>, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>Jourdan v. Jabe</u>, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us

---

[1] Approximately two weeks after filing his complaint, Grooms filed an Amended Complaint. (Doc. No. 5). Rule 15(a)(1) of the Federal Rules of Civil Procedure permits a party to amend its pleading once as a matter of course within twenty-one days after serving it or, if the pleading is one to which a responsive pleading is required, twenty-one days after service of a responsive pleading or twenty-one days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). Here, the complaint has not yet been served on any Defendant. Thus, the Amended Complaint is appropriately considered.

to conjure up [unpleaded] allegations." McDonald v. Hall, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

B. SECTION 1983 STANDARD

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. Dominguez v. Corr. Med. Servs., 555 F.3d 543, 549 (6th Cir. 2009) (quoting Sigley v. City of Panama Heights, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

C. FACTS ALLEGED BY GROOMS[2]

Grooms is currently in the custody of the Cumberland County Jail. He is a devout "Rastafarian of the House of Nyabinghi and practices an organic and preservative free, pork free, religious life and diet." (Doc. No. 5 at 6).

When he was booked into the jail on October 31, 2022, Grooms was required to answer questions about his dietary needs and allergies. He informed the officer on duty that he was allergic to pork and "does not partake in the consumption of any pork or pork byproducts religiously and has not for over (15) fifteen years." (Id. at 1). Grooms also shared that he is allergic to pineapple. (Doc. No. 8 at 2). His dietary restrictions were entered into a digital database, after which time he was required to review what had been entered and confirm its accuracy. Grooms did so and found it accurate.

---

[2] Typically, when screening the complaint pursuant to the PLRA, the Court would consider only the allegations made in the complaint. Here, however, the Court finds it appropriate also to consider allegations made in the TRO motion concerning actions taken by Defendants after Plaintiff filed his complaint.

Grooms believes he entered jail in "perfect health" because he exercised regularly, and he had never had any blood pressure "scares" prior to his incarceration. (Doc. No. 5 at 2). He is 6'1" in height and weighed 175 pounds. (Id.) He was placed in general population and, until December 25, 2022, was fed the same meals as the other inmates. Deputy Turner told him that "his 'religious' diet wasn't going to alter his meals because the kitchen and jail hasn't served any pork 'in a long time.'" (Doc. No. 5 at 2).

During the second week of November 2022, Grooms experienced a "sudden drastic increase in blood pressure and stomach irritability." (Id.) The jail nurse, Casey Honeycutt, told him that, "due to his 'Blackness' he was just having 'normal' blood pressure problems passed down by his ancestors." (Id.) After he disputed her aspersion, Nurse Honeycutt then commented that "the issue may be that working out was causing him too much stress" and suggested that he lose weight because weight could cause blood pressure issues. (Id.)

Following this conversation, Grooms began to experience migraine headaches and stomachaches. Each time he went to "sick call," he was charged $5 and told his blood pressure was extremely high "but not due to ingesting pork because the Cumberland County Jail does not serve pork and hasn't for over (12) years." (Id. at 3). On one occasion, when Grooms blood pressure was 200/100, Nurse Honeycutt reiterated that his "ethnicity was the problem" and prescribed him medication to lower his blood pressure. (Id.) After beginning the medication, until December 25, 2022, his blood pressure was checked regularly, and he never received a reading lower than "170/90+." (Id.)

Grooms filed several grievances expressing his concern that Defendants were serving him pork. At one point, Lieutenant Hassler responded to one of his grievances and assured him that the bologna, hot dogs, and corn dogs served to him did not contain pork. Other Defendants reassured

4

Case 2:23-cv-00044   Document 10   Filed 08/23/23   Page 4 of 20 PageID #: 68

him at various times that his meal trays did not contain pork or pork products. His complaint alleges that all Defendants who reassured him in this way were deliberately lying to him as they knew he was being served pork.

On December 25, 2022, Deputy Axel Aroyo announced that the men's housing unit 504 would be served "deep fried pork cutlet" for Christmas dinner. (Id. at 4). When he told Deputy Aroyo that he could not eat pork, Deputy Aroyo told him that, if this information was noted in his file, he (Deputy Aroyo) would obtain an alternative meat for huim. Deputy Aroyo ultimately brought him an alternative meal tray with a sticky note that said "'no pork.'" (Id.)

Also on December 25, 2022, Administrative Sergeant Griffith, who manages the jail kitchen at that time, admitted that he and his "kitchen worker and staff" had neglected to honor his dietary needs. (Id. at 6). Griffith required Grooms to sign a note saying that they had spoken and had corrected the issue.

For the next six months, Grooms received an alternative meal tray without any pork or pineapple. He stopped taking the blood pressure medication provided by Nurse Honeycutt and had no further "blood pressure issues or stomachache and bowel 'uncomfortability' [sic] and I.B.S.-like symptoms." (Id. at 5). Grooms no longer suffered from migraines and panic attacks. (Id. at 5).

On August 10, 2023, Head Nurse Tyler l/n/u refused to provide him with any medical attention after "the staff neglected to respect the plaintiff's dietary needs." (Doc. No. 8 at 1). Specifically, Grooms was served pineapples "in the form of a 'marshmallow orange' dessert." (Id. at 2). According to him, if he "hadn't recognized the issue so soon . . . Plaintiff would have tragically passed from anaphylactic shock, suffocation and reaction." (Id.) Nurse Tyler demanded "more proof" of his allergies than what had been entered into Grooms' electronic file upon his booking. (Id.) Even though Grooms' allergy and religious restrictions have not changed since

5

October 31, 2022, he arranged for medical records documenting his allergies to be brought to the jail from the Cumberland County Medical Center to ensure his temporary safety. However, he fears that Defendants will again serve him foods to which he is allergic and/or prohibited from eating by his religion.

D. ANALYSIS

Grooms brings claims against Defendants Casey Cox, Sheriff; Tim Clafflin, Captain; John Griffith, Administrative Sergeant; Casey Honeycutt, nurse; Mike Hassler, Lieutenant; Laurie Turner, Deputy; and the Cumberland County Sheriff's Department. Excluding the Cumberland County Sheriff's Department, the complaint names all Defendants in their individual and official capacities. (Doc. No. 1 at 2-4).

As a preliminary matter, with respect to Grooms' Section 1983 claims against the Cumberland County Sheriff's Department, a police or sheriff's department is not an entity capable of being sued under 42 U.S.C § 1983. See, e.g., Durham v. Estate of Gus Losleben, No. 16-1042-STA-egb, 2017 WL 1437209, at *2 (W.D. Tenn. Apr. 21, 2017); McKinney v. McNairy Cnty., Tenn., 1:12-CV-01101, 2012 WL 4863052, at *3 (W.D. Tenn. Oct. 11, 2012); Newby v. Sharp, 3:11-CV-534, 2012 WL 1230764, at *3 (E.D. Tenn. Apr. 12, 2012); Mathes v. Metro. Gov't of Nashville and Davidson Cnty., No. 3:10-CV-0496, 2010 WL 3341889, at *2 (M.D. Tenn. Aug. 25, 2010). Thus, the complaint fails to state claims upon which relief can be granted under Section 1983 against the Cumberland County Sheriff's Office. These claims will be dismissed.

1. First Amendment free exercise claims

Grooms' complaint alleges denial of freedom to exercise his religion because he has not been consistently provided a pork-free diet, which his religion requires. In fact, he alleges that Defendants tricked him into repeatedly consuming pork, knowing it violated his religious beliefs.

"The Free Exercise Clause of the First Amendment, applicable to the States under the Fourteenth Amendment, provides that 'Congress shall make no law . . . prohibiting the free exercise' of religion." Fulton v. City of Philadelphia, Penn., __ U.S. __, 141 S. Ct. 1868, 1876 (2021). It is settled that prisoners have a First Amendment right to practice their religious beliefs, Hudson v. Palmer, 468 U.S. 517, 523 (1984), and prisoners must be provided "reasonable opportunities" to do so. Id. Nevertheless, an inmate's First Amendment right to exercise his religious beliefs may be subjected to reasonable restrictions and limitations reasonably related to legitimate penological interests. See Bell v. Wolfish, 441 U.S. 520, 549-51 (1979) (holding that limited restriction against receipt of hardback books under certain circumstances was a rational response to a security problem and did not violate First Amendment rights of inmates); Pollock v. Marshall, 845 F.2d 656, 658-60 (6th Cir. 1988) (holding that plaintiff who challenged regulation limiting length of prisoners' hair failed to establish a constitutional violation, as he did not demonstrate he was prevented from practicing his religion in ways other than being required to comply with the hair length regulation).

Consistent with the right to free exercise of religion, prisoners are entitled to "meals that meet their nutritional needs" and "do not violate their sincerely-held religious beliefs." Robinson v. Jackson, 615 F. App'x 310, 314 (6th Cir. 2015) (citing Colvin v. Caruso, 605 F.3d 282, 290 (6th Cir. 2010)). "But there is no constitutional right for each prisoner to be served the specific foods he desires . . . in prison." Id. (citing Spies v. Voiovich, 173 F.3d 398, 406-07 (6th Cir. 1999) (holding that providing a Buddhist prisoner with a vegetarian diet but not a vegan diet was constitutionally permissible, and "the fact that Plaintiffs dislike the alternate diet available does not render it unreasonable or legally deficient.")).

To establish a free exercise First Amendment claim, Grooms must show that: (1) the belief or practice he seeks to protect is religious in his own "scheme of things," (2) his belief is sincerely held, and (3) the defendant's behavior infringes upon this practice or belief." Kent v. Johnson, 821 F.2d 1220, 1224-25 (6th Cir. 1987).

Here, the complaint alleges Grooms' religion, Rastafarian, forbids the consumption of pork. At this stage, the Court must accept his allegation as true. See Haight v. Thompson, 763 F.3d 554, 566 (6th Cir. 2014) ("[N]either RLUIPA nor for that matter the First Amendment permits governments or courts to inquire into the centrality to a faith of certain religious practices— dignifying some, disapproving others.").

Grooms' complaint alleges that, prior to his incarceration at the Cumberland County Jail, he had not eaten pork or pork products in over fifteen years. (Doc. No. 5 at 1). The Court will assume for purposes of the required PLRA screening that Grooms' religious beliefs are sincere. See Yaacov v. Mohr, No. 16-4361, 2018 WL 6333604, at *2 (6th Cir. June 5, 2018) (holding that Yaacov's allegation that he maintained a meatless kosher diet for six years prior to the institution's change in food service provider was sufficient to adequately allege a sincerely held religious belief).

He further alleges that Defendants knew his religious beliefs required a pork-free diet yet knowingly and intentionally deceived him into consuming pork for an approximate three-month period. Also, he became physically ill because of consuming pork and, when he ultimately discovered that he had been eating pork unknowingly, experienced psychological distress for violating his religious tenets. For purposes of the required PLRA screening, the Court finds that these allegations state non-frivolous First Amendment under Section 1983 against Sheriff Casey

Cox, Captain Tim Clafflin, Administrative Sergeant John Griffith, Nurse Casey Honeycutt, Lieutenant Mike Hassler, and Deputy Laurie Turner in their individual capacities.

Grooms also alleges First Amendment claims against these Defendants in their official capacities. He believes that every individual Defendant except Nurse Honeycutt is an employee of Cumberland County, Tennessee. Nurse Honeycutt is an employee of Covenant Health, the entity that provides medical care to inmates of the Cumberland County Jail.

The Court will begin its analysis with the Cumberland County employee Defendants. When a defendant is sued in his or her official capacity as an employee of the government, the lawsuit is directed against "the entity for which the officer is an agent." Pusey v. City of Youngstown, 11 F.3d 652, 657 (6th Cir. 1993). A claim of governmental liability requires a showing that the alleged misconduct is the result of a policy, statement, regulation, decision, or custom promulgated by Cumberland County or its agent. Monell Dep't of Social Svcs., 436 U.S. 658, 690-691 (1978). In short, for Cumberland County to be liable Grooms under Section 1983, there must be a direct causal link between an official policy or custom and the alleged violation of his constitutional rights. City of Canton v. Harris, 489 U.S. 378, 385 (1989); Burgess v. Fisher, 735 F.3d 462, 478 (6th Cir. 2013) (citing Monell, 436 U.S. 658, 693); Regets v. City of Plymouth, 568 F. App'x 380, 393 (6th Cir. 2014) (quoting Slusher v. Carson, 540 F.3d 449, 456-57 (6th Cir. 2008)). Grooms can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom or tolerance or acquiescence of federal rights violations. Burgess, 735 F.3d at 478.

9

Grooms indeed alleges that Sheriff Cox and Captain Clafflin failed to properly train jail staff regarding inmate requests for religiously compliant meals and failed to monitor employee conduct surrounding inmate meal service. (Doc. No. 5 at 7). He further alleges that Defendants Griffith, Hassler, and Turner "conspire[d] to deceive and injure" him by falsely assuring him that the meals served to him did not contain pork when Defendants knew otherwise and knew that Grooms' religion prohibited the consumption of pork. (Id. at 8). For purposes of the required PLRA screening, the Court finds that these allegations state colorable First Amendment official-capacity claims against Defendants Sheriff Casey Cox, Captain Tim Clafflin, Administrative Sergeant John Griffith, Lieutenant Mike Hassler, and Deputy Laurie Turner in their official capacities, which is actually a single claim against Cumberland County, Tennessee.

With regard to Grooms' official-capacity claims against Nurse Honeycutt, she stands in the shoes of her employer, Covenant Health, the private entity responsible for providing medical care to Cumberland County jail inmates. Because Covenant Health performs a traditional state function in providing medical care to inmates, it acts under color of state law and may be sued under Section 1983. Hicks v. Frey, 992 F.2d 1450, 1458 (6th Cir. 1993). For Covenant Health to be liable under Section 1983, Grooms must allege that there is a direct causal link between a policy or custom of Covenant Health and an alleged constitutional violation. See Monell, 436 U.S. 658, 691. In other words, Covenant Health may be liable under Section 1983 "if its official policies or customs resulted in injury to the plaintiff." O'Brien v. Mich. Dep't of Corr., 592 F. App'x 338, 341 (6th Cir. 2014); see also Mason v. Doe, No. 3:12CV-P794-H, 2013 WL 4500107, at *1 (W.D. Ky. Aug. 21, 2013) (collecting cases) ("a private corporation may be liable under § 1983 when an official policy or custom of the corporation causes the alleged deprivation of a federal right"). Further, to hold Covenant Health liable, Grooms cannot rely on the theory of respondeat superior or vicarious

liability. Street, 102 F.3d at 818. Liability attaches only if Covenant Health's policies are shown to be the "moving force" behind Grooms' injuries. City of Canton v. Harris, 489 U.S. 378, 388 (1989). Grooms must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy." Garner v. Memphis Police Dep't, 8 F.3d 358, 353-64 (6th Cir. 1993).

Here, construed liberally, Grooms alleges (1) Covenant Health has a policy or practice of refusing to accommodate the religious diets of certain inmates, including him and (2) this policy or practice was the moving force behind his injuries. For purposes of the required PLRA screening, the Court finds that the complaint states a colorable First Amendment claim against Nurse Honeycutt in her official capacity, which is a claim against Covenant Health. This claim shall proceed for further development.

2. Eighth Amendment claims

While Grooms does not specifically refer to the Eighth Amendment, he alleges that Defendants have intentionally served him food items to which he is allergic (pork and pineapple) on more than one occasion, resulting in physical harm to him, and at least one nurse has refused to provide medical treatment to him.

It is well-settled that "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." Pfeiffer v. Butler Cty. Sheriff Dep't, No. 1:10CV672, 2012 WL 1203557, at *8 (S.D. Ohio Apr. 10, 2012) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)). And the Eighth Amendment protects prison inmates from "cruel and unusual punishments," which includes "extreme deprivations" that deny "the minimal civilized measure of life's necessities." Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

Grooms states that he is "awaiting trial" and is a "county/state prisoner." (Doc. No. 1 at 12). However, he did not check the box for "pretrial detainee" or "convicted and sentenced state prisoner." (Id.) Thus, it is unclear whether Grooms has been convicted of any county or state offense, although the allegations of the complaint strongly suggest that he is a pretrial detainee. The distinction matters. "[T]he Eighth Amendment does not apply to pretrial detainees." Greene v. Crawford Cty., Mich., 22 F.4th 593, 605 (6th Cir. 2022) (citing Graham ex rel. Est. of Graham v. Cty. of Washtenaw, 358 F.3d 377, 382 n.3 (6th Cir. 2004)). State pretrial detainees are instead protected by the Due Process Clause of the Fourteenth Amendment. Greene, 22 F.4th at 605; Spencer v. Bouchard, 449 F.3d 721, 727 (6th Cir. 2006), abrogated on other grounds by Jones v. Bock, 549 U.S. 199 n.9 (2007).

The Due Process Clause "provides similar if not greater protections than the Cruel and Unusual Punishments Clause" of the Eighth Amendment. Spencer, 449 F.3d at 727 (citing Cty. of Sacramento v. Lewis, 523 U.S. 833, 849-50 (1998) and Bell v. Wolfish, 441 U.S. 520, 545 (1979)). To state a claim under either Fourteenth Amendment in this context, a plaintiff must allege (among other things) that an objectively "sufficiently serious" deprivation has occurred, "resulting in a denial of the 'minimal civilized measure of life's necessities.'" Francis v. Altiere, 491 F. App'x 539, 541 (6th Cir. 2012) (quoting Farmer, 511 U.S. at 834); Spencer, 449 F.3d at 728.

Grooms' allegations concerning his meal service and lack of medical care are concerning, and they may state colorable claims under the Eighth or Fourteenth Amendment. However, as his status is unclear at this time, the Court will permit him to amend his complaint, if he so desires, to clarify his status as a pretrial detainee or convicted prisoner and more fully articulate a cruel and unusual punishment claim against the appropriate individuals and/or entities.

3. RLUIPA claims

Grooms also alleges claims under RLUIPA. RLUIPA "provide[s] very broad protection for religious liberty." Holt v. Hobbs, 574 U.S. 352, 356 (2015). RLUIPA "prohibits state and local governments from placing 'a substantial burden' on the 'religious exercise' of any inmate unless they establish that the burden furthers a 'compelling governmental interest' and does so in the 'least restrictive' way." Haight, 763 F.3d 554, 559 (quoting 42 U.S.C. § 2000cc-1(a)(1)-(2)). RLUIPA defines " 'religious exercise' capaciously to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" Holt, 574 U.S. at 358 (quoting § 2000cc-5(7)(A)). An action will be classified as a substantial burden when that action forced an individual to choose between following the precepts of his religion and forfeiting benefits or when the action in question placed substantial pressure on an adherent to modify his behavior and to violate his beliefs. Barhite v. Caruso, 377 F. App'x 508, 511 (6th Cir. 2010) (internal punctuation and citations omitted).

Congress specified that RLUIPA "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." § 2000cc-3(g). Courts have recognized that, in the prison context, RLUIPA provides greater protections than the First Amendment. See Colvin v. Caruso, 605 F.3d 282, 296 (6th Cir. 2010) (citing Lovelace v. Lee, 472 F.3d 174, 199-200 (4th Cir. 2006)); Buckner v. Vargas, No. 3:20-cv-00562, 2020 WL 4446261, at *3 (M.D. Tenn. Aug. 3, 2020) (noting that RLUIPA "is a higher standard for the government to meet than the . . . standard for First Amendment claims brought under Section 1983.").

Analysis under RLUIPA is a "three-act play." Cavin v. Mich. Dep't of Corr., 927 F.3d 455, 458 (6th Cir. 2019). First, "the inmate must demonstrate that he seeks to exercise religion out of a

13

'sincerely held religious belief.'" Id. (quoting Holt, 574 U.S. at 361). So long as the practice is traceable to a sincerely held religious belief, see Cutter v. Wilkinson, 544 U.S. 709, 725 n.13 (2005), it does not matter whether the inmate's preferred exercise is "central" to his faith, 42 U.S.C. § 2000cc-5(7)(A). Second, the inmate "must show that the government substantially burdened that religious exercise." Cavin, 927 F.3d at 458. While the phrase "substantial burden" is not defined in RLUIPA, courts have concluded that a burden is substantial where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." Living Water Church of God v. Charter Township of Meridian, 258 F. App'x 729, 733-34 (6th Cir. Dec. 10, 2007) (citations omitted). A burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise," see, e.g., Konikov v. Orange County, Florida, 410 F.3d 1317, 1323 (11th Cir. 2005), or does not "pressure the individual to violate his or her religious beliefs." Living Water Church of God v. Charter Township of Meridian, 258 F. App'x at 734. Upon satisfaction of these two steps, the burden then shifts to the government for the third act: it "must meet the daunting compelling-interest and least-restrictive-means test." Id.

Here, as noted above, the Court assumes for purposes of the required PLRA screening that Grooms seeks to follow a no-pork diet out of a "sincerely held religious belief." The complaint alleges that Defendants tricked him into consuming pork, despite his constant pursuit for assurances that he was not being served pork or pork products and his worsening physical condition. The alleged burden placed on him—knowing that he repeatedly consumed pork over a period of three months in violation of his religious tenets—could be viewed as a "substantial" burden on his religious beliefs. Further, his allegations may be reasonably construed to imply that Defendants' actions are not the least restrictive means of furthering a compelling government

14

interest. See March v. Townsend, No. 2:12cv-266, 2013 WL 501667, at *3 (E.D. Tenn. Feb. 8, 2013) (finding that prisoner-plaintiff who asserted that he was denied a kosher diet stated arguable claims under RLUIPA). The Court therefore finds that these allegations state colorable individual-capacity RLUIPA claims against Defendants Sheriff Casey Cox, Captain Tim Clafflin, Administrative Sergeant John Griffith, Nurse Casey Honeycutt, Lieutenant Mike Hassler, and Deputy Laurie Turner.

Given the allegations set forth in the complaint and in Grooms' TRO motion, the Court finds that it would be inappropriate to dismiss his official-capacity RLUIPA claims at this time. See Ritter v. Davis, No. 1:18 CV 0826, 2018 WL 4271043, at *4 (N.D. Ohio Aug. 20, 2018) (denying defendants' motion to dismiss RLUIPA claims based on an alleged system-wide denial of all kosher food "to any and all Jewish inmates in Ohio prison facilities operated by Core Civic"). Although it is unclear whether Grooms can ultimately prevail, the Court concludes that these claims will not be dismissed at this early stage in the proceedings.

4. Racial bias allegations

Grooms alleges that Nurse Honeycutt told him that, "due to his 'Blackness' he was just having 'normal' blood pressure problems passed down by his ancestors." (Doc. No. 5 at 2). The complaint further alleges that, on another occasion, Nurse Honeycutt told him that "his ethnicity was the problem." (Id. at 3). While the focus of the complaint is primarily on Defendants' alleged failure to respect his religious beliefs and dietary restrictions, his allegations that his "Blackness" played a role in the quality of health care he received may support a racial bias or discrimination claim.

"Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." Wolff v. McDonnell, 418 U.S. 539, 556 (1974);

15

Henry v. Metro. Sewer Dist., 922 F.2d 332, 335 (6th Cir. 1990). See also Brand v. Motley, 526 F.3d 921, 924-25 (6th Cir. 2008) (reversing the district court and finding that pro se prisoner's discrimination claim stated a colorable claim where prisoner alleged he was "discriminated against for [his] race", accused defendants of having "condoned [the] actions to take place, by concurring with each others['] choices to be unjust", and defendants' pleadings conceded that prison officials (at least partly) relied on race in their housing decision). Accordingly, the Court will permit Grooms to amend his complaint for the purpose of articulating such a claim or claims.

## II. MOTION FOR APPOINTMENT OF COUNSEL

Next, Grooms has filed a Motion to Appoint Counsel. (Doc. No. 9). He states that he is unable to afford counsel, his imprisonment "will greatly limit his ability to litigate," he has limited access to a law library, he has limited knowledge of the law, and counsel "would better enable plaintiff to present evidence and cross examine witnesses." (Id. at 1).

An indigent plaintiff in a civil action, unlike a defendant in a criminal action, has no constitutional right to the appointment of counsel; rather, the appointment of counsel in such cases is a privilege "justified only in exceptional circumstances." Miles v. Michigan Dep't of Corr., No. 19-2218, 2020 WL 6121438, at *4 (6th Cir. Aug. 20, 2020) (citing Lanier v. Bryant, 332 F.3d 999, 1006 (6th Cir. 2003); Lavado v. Keohane, 992 F.2d 601, 606-07 (6th Cir. 1993)). The Court finds that the allegations made by Grooms and TRO motion warrant the appointment of counsel in this case.

## III. MOTION FOR ORDER OF TRANSFER TO DIFFERENT FACILITY/TRO

Based on "continued mistreatment and failure to provide medical attention," Plaintiff has filed a "Motion for Order of Transfer to Different Facility/TRO" in which he asks the Court to "grant him a transfer to a different facility while in custody of Tennessee, until release to either

16

T.D.O.C. custody or freedom." (Doc. No. 8 at 1). Plaintiff declares under penalty of perjury that the allegations made in his motion are true. (Id. at 2).

The Federal Rules of Civil Procedure provide for the issuance of a temporary restraining order (TRO) when appropriate. Federal Rule of Civil Procedure 65 governs the court's power to grant injunctive relief, including TROs without notice. Fed. R. Civ. P. 65(b). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981). However, "[i]f the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury, either by returning to the last uncontested status quo between the parties, by the issuance of a mandatory injunction, or by allowing the parties to take proposed action that the court finds will minimize the irreparable injury." Stenberg v. Checker Oil Co., 573 F.2d 921, 925 (6th Cir. 1978) (internal citations omitted). "Temporary restraining orders and preliminary injunctions are extraordinary remedies which should be granted only if the movant carries his burden of proving that the circumstances clearly demand it." Ciavone v. McKee, No. 1:08-cv-771, 2009 WL 2096281, at *1 (W.D. Mich. July 10, 2009) (citing Overstreet v. Lexington-Fayette Urban Cty. Gov't, 305 F.3d 566, 573 (6th Cir. 2002)). Further, where "a preliminary injunction is mandatory—that is, where its terms would alter, rather than preserve, the status quo by commanding some positive action . . . the requested relief should be denied unless the facts and law clearly favor the moving party." Glauser-Nagy v. Med. Mut. of Ohio, 987 F. Supp. 1002, 1011 (N.D. Ohio 1997).

In determining whether to issue a TRO or preliminary injunction under Federal Rule of Civil Procedure 65, a district court must consider the following four factors: (1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable harm without

the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. See, e.g., Liberty Coins, LLC v. Goodman, 748 F.3d 682, 689-90 (6th Cir. 2014); Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell, 467 F.3d 999, 1009 (6th Cir. 2006) (noting that the same four factors apply regardless of whether the injunctive relief sought is a TRO or a preliminary injunction). "These factors are not prerequisites, but are factors that are to be balanced against each other." Jones v. Caruso, 569 F.3d 258, 265 (6th Cir. 2009) (internal quotations omitted).

Before reaching the merits, however, the Court must consider whether a movant has complied with specific procedural requirements. First, because the movant bears the burden of justifying preliminary injunctive relief on the merits, Kentucky v. U.S. ex rel. Hagel, 759 F.3d 588, 600 (6th Cir. 2014), a TRO motion must be accompanied by a memorandum of law. M.D. Tenn. L.R. 65.01(b). Second, a TRO motion must be supported, at a minimum, by "an affidavit or a verified complaint." Fed. R. Civ. P. 65(b)(1)(A); M.D. Tenn. L.R. 65.01(b) (explaining that a TRO motion "must be accompanied by a separately filed affidavit or verified written complaint"). Third, a TRO movant must certify in writing "any efforts made to give notice and why it should not be required." Fed. R. Civ. P. 65(b)(1)(B). See M.D. Tenn. L.R. 65(c) (if a movant is not represented by counsel, the pro se movant must certify in writing the efforts made to give notice of the request for a TRO and the reasons why notice should not be required). This Court mandates "strict compliance" with Rule 65. Id.

Here, Grooms falls short of some of these procedural requirements with his TRO motion. However, given the Court's appointment of counsel and in the interest of justice, his request for injunctive relief will be **RESERVED**.

## IV. CONCLUSION

For the reasons discussed herein, Grooms' "Motion for Order of Transfer to Different Facility/TRO" (Doc. No. 8) will be **RESERVED**. Grooms' Motion to Appoint Counsel (Doc. No. 9), however, will be granted.

Having screened the amended complaint pursuant to the PRLA, the Court finds that Grooms' allegations state colorable First Amendment claims under Section 1983 against Sheriff Casey Cox, Captain Tim Clafflin, Administrative Sergeant John Griffith, Nurse Casey Honeycutt, Lieutenant Mike Hassler, and Deputy Laurie Turner in their individual capacities; a colorable First Amendment claim against Cumberland County, Tennessee; and a colorable First Amendment claim against Nurse Honeycutt in her official capacity, which is a claim against Covenant Health.

The Court will permit Grooms to amend his complaint, if he so desires, to (1) clarify his status as a pretrial detainee or convicted prisoner and more fully articulate a cruel and unusual punishment claim under Section 1983 against the appropriate individuals and/or entities and (2) add a racial bias or discrimination claim or claims under Section 1983 against the appropriate individual and/or entities.

The Court further finds that Grooms' allegations state colorable individual-capacity RLUIPA claims against Defendants Sheriff Casey Cox, Captain Tim Clafflin, Administrative Sergeant John Griffith, Nurse Casey Honeycutt, Lieutenant Mike Hassler, and Deputy Laurie Turner. Finally, his official-capacity RLUIPA claims will proceed for further development.

Defendants would do well to proceed cautiously and respectfully of what appear to be Grooms' sincerely held religious beliefs, medical needs, and dietary restrictions in which his "Blackness" plays no role. And, Defendants are reminded that retaliation of any kind against Grooms for exercising his First Amendment right to file and pursue a federal lawsuit is unlawful.

An appropriate Order will be entered.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE